the creditors. On this point Judge Blatchford, of the southern district of New York, in Re Vogel, [Case No. 16,983,] after quoting the several provisions of the bankrupt act relating thereto, uses the following language: "It is manifest from these provisions that when a voluntary petitioner in bankruptcy files his petition, in due form, he becomes eo instanti a bankrupt, so far as any interference with the property named in his schedule is concerned, and that such property is thereby brought into the bankruptcy court, and placed in its custody and under its protection, as fully as if actually brought into the visible presence of the court. Being in the custody of the bankruptcy court, no other court, and no person acting under any process from any other court, can, without the permission of the bankruptcy court, interfere with it, and to so interfere is a contempt of the bankruptcy court." Peck v. Jenness, 7 How. [48 U. S.] 612, 625; Williams v. Benedict, 8 How. [49 U. S.] 107; Wiswall v. Sampson, 14 How. [55 U. S.] 52, 66; Peale v. Phipps, Id. 368, 374; Taylor v. Carryl, 20 How. [61 U. S.] 583, 594–597; Freeman v. Howe, 24 How. [65 U. S.] 450; Buck v. Colbath, 3 Wall. [70 U. S.] 334.

This is a case of voluntary bankruptcy. David R. Askew filed his voluntary petition in bankruptcy, on the 30th day of December, 1868, and eo instanti he was a bankrupt, so far as any interference with the property named in his schedule is concerned; and hence the survey and valuation of property, and setting apart the homestead under the process of the court of ordinary on the 8th of January, 1869, and its approval by the ordinary on the 11th, were unauthorized by law, and are null and void. The five hundred and ten acres of land and other property named in the schedule, filed with his petition in bankruptcy, by David R. Askew, on the 30th day of December, 1868, except such portion thereof as is exempt by the bankrupt law, and the state exemption laws of force in the year 1864, must pass to the assignee in bankruptcy, for the benefit of the bankrupt's creditors.

Alexander G. Murray, Register.

ERSKINE, District Judge. I have read and carefully considered the arguments of the respective counsel in this matter, and I approve the opinion of the register, and affirm his clear and able decision. The clerk will certify this affirmation to the register.

---

## Case No. 586.

### ASKEW v. ODENHEIMER.

Circuit Court, E. D. Pennsylvania. 1845.

[Cited in Union Mut. Life Ins. Co. v. Kellogg, Case No. 14,373. Nowhere reported; opinion not now accessible.]

## Case No. 587.

### ASKEW v. ODENHEIMER.

[Baldw. 380.] [1]

Circuit Court, D. Pennsylvania. Oct. Term, 1831.

TRUSTS—COMPENSATION OF TRUSTEES — PARTNERSHIP—FRAUD BY COPARTNER — DESTRUCTION OF BOOKS AND PAPERS—EVIDENCE.

1. In Pennsylvania all trustees are entitled to a commission on moneys passing through their hands; the usual rate is five per cent, any departure therefrom is under special circumstances.
[See Burr v. McEwen, Case No. 2,193.]

2. If a partner who has committed frauds on the firm agrees to indemnify the injured party to his satisfaction, by an assignment of all the partnership effects for his indemnity, such assignment will be construed liberally in his favour, and will be reformed in equity so as to meet the intention of the parties in conformity with their agreement.

3. But the injured party will not be allowed to be the judge of his indemnity.

4. As a trustee he will be confined to such satisfaction as a court of equity deem reasonable.

5. If the books and papers of the firm have been destroyed or suppressed, false entries made in them, or no entries made by the partner who has charge of them to his debit, with a view to fraud, the injured partner may support a specific charge by his own affidavit, but not by one which specifies no amount under any particular item.

6. On a bill by the fraudulent partner for an account, the master may charge him on any evidence which is competent or admissible as proof of the item; he cannot hold the injured partner to such degree of proof, as would justify a charge under ordinary circumstances, against a customer or partner; there must however be some proof.

7. The general rules on which courts of equity act in odium spoliatoris.
[Cited in Hanson v. Lessee of Eustace, 2 How. (43 U. S.) 704.]

In equity. The bill set forth a partnership between the parties commencing in 1822, and terminating in March, 1829, when the following assignment was made by the complainant:

"Whereas, there is reason to believe, that in keeping the books of the firm of Askew & Odenheimer, errors and misentries have occurred, of which the amount cannot be ascertained, but which errors are injurious to the interests of John W. Odenheimer, one of the partners of said firm, and it is just and proper that he should be secured against any loss resulting from these errors and misentries, which have been made by his partner Joseph Askew: Now, therefore, be it known, that the said Joseph Askew, in order to secure to his partner, the said John W. Odenheimer, his full and just and undiminished share in the stock and profits of said firm, and in consideration of the sum of 10 dollars to him in hand paid by the said John; has granted, bargained, sold, assigned, trans-

---

[1] [Reported by Hon. Henry Baldwin, Circuit Justice.]