THE CLEVE-
LAND AND ST.
LOUIS RAIL-
ROAD CO.
*v.*
PATTISON.

*Wednesday,
November* 28.

---

THE CLEVELAND AND ST. LOUIS RAILROAD COMPANY, *v.*
PATTISON.

Suit by *A.*, as assignee of *B.*, on a promissory note executed by the *Railroad Company.* Answer: That the note was given for services rendered by *B.*, the payee, as agent of the company to procure subscriptions of stock; that, in the exercise of such agency, he had fraudulently, and without the knowledge of the company, received reward from persons subscribing lands for stock, for procuring their lands to be taken by the company.

*Held,* that the agency in behalf of the subscribers was inconsistent with the agency for the company; was an act of bad faith, and worked a forfeiture of all right to compensation from the company.

*Held,* also, that the same principle would apply, though the agency for the company extended only to the procuring of propositions for subscriptions of stock.

Nov. Term, 1860.

———

THE CLEVE-
LAND AND ST.
LOUIS RAIL-
ROAD CO.
v.
PATTISON.

*Wednesday,*
*November* 28.

APPEAL from the *Marion* Circuit Court.

PERKINS, J.—Suit by *William A.,* assignee of *Ed. W. Pattison,* on a promissory note executed by the *Cleveland and St. Louis Railroad Company.*

The defendant answered as follows, viz.: "That said note was procured by the fraud, covin, and deceit of the said *Edward W. Pattison,* in this; that the said *Edward* was, and, long before the making of said note, had been, the agent of said defendant to procure subscriptions to the capital stock of said defendant, and that, as such agent, he falsely and fraudulently represented to the defendant, that *A. C. O. Gwynn* proposed to subscribe to said stock 7,000 acres of land in Tennessee, at $5 per acre; that several other persons (naming them), proposed to subscribe, severally, divers numbers of acres at certain prices (specifying numbers and prices); that the titles of said several parties to said lands were good, and that the lands were of the values respectively named, and that said parties were responsible on their covenants of title. And the said defendant avers that said lands were worthless, were not proposed at the prices named, and that said *Edward* knew that they were worthless, the titles to them bad, and the persons proposing to convey them irresponsible. And the defendant further avers, that said *Edward,* with one *James W. Howard,* in some cases, and with *Thomas* and *Brashears,* in others, conspired and colluded to swindle and defraud said defendant; and procured said lands to be proposed for stock, and afterward to be conveyed to said defendant, at from one cent to ten cents an acre, for cash, in some instances, and in others, on an arrangement between the vendors of the lands and said *Edward* and his partners, to divide the stock issued by said defendant in payment of the lands, in the proportions of one-third to the vendors severally, and the other two-thirds to said *Edward* and his partners.

Nov. Term, 1860.

THE CLEVE-
LAND AND ST.
LOUIS RAIL-
ROAD CO.
v.
PATTISON.

And defendant avers that said *Edward* did not disclose to the defendant any of the facts above stated, as to the mode of purchase of said lands and the division of the stock issued therefor, nor as to his relations with said *Howard*, *Thomas* and *Brashears*, and the parties conveying said lands, but carefully and fraudulently concealed the same, of all which the defendant was ignorant. And said defendant, relying upon said *Edward* as her agent, and having no other means of information, received the conveyances of said lands, at the prices first above named, and issued stock therefor; and that the note sued on was given to said *Edward* in consideration of his services as stock solicitor, &c."

To this answer a demurrer was sustained, and the plaintiff had judgment.

No objection was taken to the answer, if there could rightly have been, for duplicity; and all its allegations must, therefore, be examined to ascertain whether a defense can be found among them.

We understand the answer to assert, that *Edward W. Pattison* was employed, as the agent of the defendant, to obtain land subscriptions of stock, and that the note in question was given to him in consideration of his services in such agency, pursuant to the original contract. We further understand, that, in the execution of such agency, he received pay from the persons subscribing land for stock, in consideration of his getting their lands taken by the company; thus becoming, in effect, the agent of the latter. The latter agency was inconsistent with the former; was an act of bad faith, and, on general principles, worked a forfeiture of all right to compensation from his first principals. The second agency was without their knowledge or consent. See *Watkins* v. *Cousall*, 1 E. D. Smith, 65, (1) and *Dunlap* v. *Richards*, 2 *id.* 181. (2)

And, we think, this principle would reach the case, even if the agency for the defendant extended no further than procuring propositions of subscriptions of specific tracts of land; for a secret agency in behalf of the subscriber of such lands would make it the interest of the agent to practice, while his agency for the company, in the absence of knowledge on

their part of his agency for the subscriber, would put it in his power to practice, fraud upon the company.

*Per Curiam.*—The judgment is reversed, with costs. Cause remanded for further proceedings.

*L. Barbour* and *J. D. Howland*, for appellant.

*J. Morrison*, *D. McDonald* and *C. A. Ray*, for appellee.

(1) The following is an extract from the opinion of the Court in the case of *Watkins* v. *Cousall*, referred to in the text: "There is also another fact apparent in these papers, which throws doubt on *Lewis'* claim, viz. : that he received from the purchaser the same amount of commission that is claimed. from the seller. In making a bargain, a broker can hardly act with fairness, if he expects to be paid by both parties. According to *Lewis'* statement, as proved by defendant's witnesses, he was to get all he realized over $3,950 ; and if he was employed by the purchaser also, it could only have been to have purchased the house on as reasonable terms as possible. These two employments are entirely incompatible. The faithful discharge of one, would be a violation of duty to the other, and under such circumstances, commissions could not be recovered from both."

(2) From this case we extract the following: "The duties which an employment to sell for the best price imposes, are inconsistent with those which are created by an undertaking to buy upon the best terms ; and I have little hesitation in saying, that if one who is employed as agent or broker to make a purchase, secretly, without the knowledge of his employer, accepts an agency from the owner, and a commission from him for selling, he thereby forfeits all claim to compensation from the buyer. His acts amount to a breach of his undertaking with the latter—an abandonment of his employment—a betrayal of his confidence."