[No. 3883.   Decided January 10, 1902.]

ROBERT L. PARROTT, *Respondent*, v. F. L. JACOBSON
*et ux., Appellants.*

COMMISSIONS BASED ON AMOUNT OF SALES — ACTION TO RECOVER —
DESTRUCTION OF MEMORANDA OF SALES — AMOUNT ESTABLISHED BY
COMPARISON.

In an action by a clerk against his employer to recover com-
missions on sales of goods under a contract which provided that
he should have a stipulated per cent. of all sales of a year in ex-
cess of a certain sum, evidence on the part of the clerk of the
amount of business transacted during a portion of the year
is admissible for the purpose of establishing by comparison
the amount of business for the whole year, where his employer
had destroyed the daily sale slips so as to prevent the clerk from
actually ascertaining what the sales from time to time amount-
ed to.

Appeal from Superior Court, King County.—Hon. E. D. Benson, Judge. Affirmed.

*Samuel S. Carlisle,* and *Ballinger, Ronald & Battle,* for appellants.

*Tucker & Hyland,* for respondent.

Per Curiam.—This action was brought by the respondent, Parrott, against the appellants, Jacobson and wife, to recover commissions alleged to be due under a certain written agreement wherein the appellants, who were storekeepers, agreed to employ the respondent as a clerk and salesman for a period of one year, and to pay him for such services at the rate of $20 per week; and it was provided in the agreement that, should all the goods sold during the said year exceed the sum of $20,000, the appellants would pay respondent, in addition to the fixed weekly compensation, the further amount of five per cent. on all goods sold in excess of said $20,000 up to $30,-000, and on all goods sold in excess of $30,000 ten per cent. commission, with a reserved authority on the part of the appellants to discharge the respondent in case he neglected his duties at any time during the year. In consideration therefor respondent agreed to devote his entire time and attention during the usual business hours to the duties of his employment, and to exert himself at all times to promote the business of the appellants. Respondent alleges in his complaint that he received the sum of $20 per week in accordance with the terms of the contract, but alleges upon information and belief that between the 10th day of July, 1900, the sales of said business aggregated the sum of $50,000, and that there was therefore due him, pursuant to said contract, the sum of $2,500 commissions on said sales. Appellants admitted the con-

tinued employment of respondent under the contract, but denied the faithful performance of duties imposed by the contract; admitted the sale of goods to such an amount as would entitle the respondent under his contract to the sum of $498, and no more; and that such sum was tendered, before the commencement of the action, to respondent, but was refused, and the tender was made good by deposit in court to await judgment.

The assignments of error are: (1) That the court erred in refusing appellants' motion to direct a verdict for appellants subject to the tender of $498; (2) in admitting testimony of the respondent as to the comparative business transacted by appellants for the months of October, November, December, January and February; (3) in submitting said cause to the jury; (4) that the verdict is grossly in excess of any possible commission that could be computed on any theory of the testimony, and is the result of passion or prejudice; (5) in refusing appellants' request for instructions and in instructing the jury, to which appellants duly excepted. An examination of the testimony convinces us that there was sufficient testimony, if properly admitted, to justify the verdict. Therefore there was no error under the first assignment. So far as the objection to the testimony in relation to the comparative business transacted by the appellants for certain months is concerned, the testimony was admissible under the rule announced by this court in *Bingham v. Keylor*, 25 Wash. 156 (64 Pac. 942). In the case at bar the testimony shows that the appellant F. L. Jacobson destroyed the original daily sale slips. The manner of conducting the business was as follows: When the day's business was over the appellant would take all of the sale slips or salesmen's books, foot them, count the cash in the drawer, and, if no goods had been returned during the day, and no

mistakes made by the salesmen, the cash in drawer and the footing of the sale slips should balance. The cash was then put down on the cash book as "merchandise sales" in one gross sum, making one of the items in the cash book ranging from twenty to a much larger number for each day. No book other than the cash book was offered by appellants to show the sales. There was testimony that during the time the respondent had access to these sale slips the entries in the cash book in several instances did not correspond with the sale slips, the disparity being in appellant's favor. It is the theory of the respondent— and we think there is sufficient evidence to justify it— that, after the first half of the year, when it was discovered by the appellants that the respondent was keeping watch and account of the sales, the appellants commenced to destroy the sale slips so as to prevent respondent from accurately ascertaining what the sales were from time to time amounting to. The general growth of the business was shown, and each month's business was compared with the business for one month, about which there was no dispute, and the testimony objected to is, in substance, that a comparison was made by the witness between the months where the sales were known by him and the months where he was deprived of access to that information. We think, under the ruling in *Bingham v. Keylor, supra,* that this testimony was admissible. In that case one member of the firm of doctors destroyed the books of the firm, and the plaintiff was allowed to make an estimate of the damages suffered by the partnership by reason of the defendant's misconduct. The court said:

"If the defendant in this action, through the negligence of anyone, had been rendered incapable of pursuing his calling, in a suit to recover damages for such negligence he would be entitled to show generally what the earning

capability was per annum of the firm to which he belonged, for the purpose of giving to the jury a basis upon which to estimate his loss. Why shall not the same principle be applied in this action? If the books of the firm had been kept, and accounts had been entered, the books would undoubtedly furnish the best evidence, and an accurate account could be stated therefrom. Here was a partnership, which, from its very nature, called for transactions with many people, scattered over a large area, many of the items being charges as small as one dollar. It was impossible, when this action was tried, to know or recall to mind all, or nearly all, the persons for whom the partnership rendered services; and it was impossible to call witnesses to prove the many services rendered, visits made, prescriptions given, and office consultations. The next best evidence available was based upon the annual or daily earning capacity of the firm. The torn pads, and the testimony of the plaintiff as to the amount of business done in late years, as compared with the earlier years, were used."

The introduction of this testimony was sustained, and the court quoted approvingly from the principles announced by Lord ELDON, in *Lupton v. White,* 15 Ves. 432, where it was said:

"If a man by his own tortious act makes it impossible for another to ascertain the value of his property, and that in a transaction, in which the former was not merely under an implied moral obligation, but pledged by a solemn undertaking in a court of justice that such should not be the state of things between them, by these means preventing the guard which the court would have effectually interposed, is the argument to be endured, that, as the party so injured cannot distinguish his property, therefore he shall have nothing? That is not the law of this country as administered in courts, either of law or equity."

The court quoted also from *Gray v. Haig,* 20 Beav. 219, where it was said:

"In this case the books which would have proved the clear state of the accounts between the parties, have been destroyed by Mr. Gray after the litigation had begun. . . . The result is, that in my opinion, Mr. Gray is not entitled to be allowed the commission which otherwise would have been his as of right. I believe, in this case, as in most cases of this description, the want of evidence operates much more prejudicially to the person who causes its removal than if the evidence had been before the court; but the rule of law and of equity, and of morality and of common sense, in all such cases, is one and the same, and it is, in my opinion, inviolable. It is of the greatest importance for the conduct of all business transactions in this country, whether commercial or otherwise, that the parties who deal together should understand, that perfect fairness and openness is that system which alone it is their interest to adopt."

Applying the principles there announced to this case, the appellants cannot avoid the commissions by depriving their employee of the testimony which would have established to a certainty the amount of commissions earned.

There is a dispute in the testimony as to whether the respondent had access to the cash book, but that is a matter which was submitted to the discretion of the jury, and upon that point their verdict cannot be disturbed. There was no error committed by the court in its instructions or refusal to instruct.

The judgment is affirmed.