[No. 24377. Department One. April 27, 1933.]

CARL G. BLOMQUIST, *Respondent*, v. LEWIS S. ROTH, *Appellant*.

LEWIS S. ROTH, *Appellant*, v. CARL G. BLOMQUIST, *Respondent*.[1]

*Clay Allen* and *Arthur E. Carr*, for appellant.

*Poe, Falknor, Falknor & Emory*, for respondent.

HOLCOMB, J.—This appeal is from a judgment upon two separate actions, tried jointly in the lower court. The first action was originally instituted by respondent against appellant in Pierce county, and transferred to King county. In it, respondent alleged partnership

[1]Reported in 21 P. (2d) 279.

relations existing between him and appellant, and sought an accounting and to recover a sum of money from appellant by reason of expenditures alleged to have been made by respondent for their common account in the operation of a sheep ranch in Pierce county. The second suit was one brought in King county by appellant on February 26, 1931, alleging a copartnership between the parties entered into on August 12, 1930, by oral agreement, and that, "as copartners," they continued to operate the property as a sheep ranch, and that

". . . they would share equally in further costs of the enterprise and divide equally all revenues, receipts and profits to be derived therefrom and that they would further enter into articles of copartnership;"

that respondent has repeatedly refused and continues to refuse to enter into such articles of copartnership, though often requested by appellant so to do. Appellant also made an affidavit on February 26, 1931, in support of the appointment of a receiver, in which he deposed that he and respondent "are copartners, . . . and conducting a sheep-ranch."

A receiver was appointed, by consent of both parties, on April 10, 1931, to take charge of the "assets belonging to the copartnership composed of the plaintiff and the defendant herein."

At the beginning of the trial of the consolidated action, an application was made and granted to amend the pleadings of appellant, alleging certain statements and misrepresentations made by respondent to appellant prior to the formation of any contractual relationship between them. After a trial to the court without a jury, the trial court found:

"That Lewis S. Roth is now and was at all the times hereinafter mentioned a resident of King county,

Washington; that on or about the 12th day of August, 1930, Carl G. Blomquist, in consideration of the sum of $2,300 paid him by Lewis S. Roth, conveyed to Lewis S. Roth an undivided one-half interest in certain property known as the Neff Ranch in Pierce county, Washington, which property was then being purchased upon an executory contract by Carl G. Blomquist, together with all sheep, cattle, horses, pigs, tools and implements thereon, subject to all encumbrances that were against said ranch, livestock and personal property, upon the understanding and agreement between the parties hereto that they would become and were from that time copartners in the operation of said properties above described as a sheep ranch and that they would as such copartners share equally in the expenses incident to the operation of said copartnership, and in any profits derived from said operation.

"That it was further agreed at said time between the parties that they would share equally between them the cost of operating said ranch as a sheep ranch and that if either party made any advances in that respect the other would promptly reimburse him to the extent of one-half thereof. That said copartnership continued in existence in the operation of said ranch up to the 14th day of April, 1931, when a receiver was appointed for said copartnership and the assets thereof in this cause upon the application of said Lewis S. Roth. That during the existence of said copartnership the said Carl G, Blomquist expended sums of money in the payment of wages, gasoline, feed, real estate contract payments, purchase of sheep and for other purposes, all of which expenditures and payments were made for and upon behalf of said copartnership and with the knowledge of said copartner Lewis S. Roth, said net expenditures for said period totaling $5,557.51. That during the aforesaid period said copartner Lewis S. Roth, expended for said copartnership purposes, with the knowledge of Carl G. Blomquist, $1,483.59. That there is now due and owing from Lewis S. Roth to Carl G. Blomquist one-half of $4,073.92, or $2,036.96, less a credit of $74.96 to

which the said Lewis S. Roth is entitled by reason of the sale of berries by Carl G. Blomquist, leaving a net amount due and owing from Lewis S. Roth to Carl G. Blomquist of $1,962.00, no part or portion of which has been paid although demand has been made therefor.''

It further found that no fraudulent representations were made by respondent to appellant either for the purpose of inducing appellant to enter into the copartnership agreement or with respect to the properties or assets of the copartnership or of respondent's previous experience in a sheep raising business.

After a trial lasting about seven days, the introduction of 583 pages of testimony and 71 exhibits, the trial judge also made an elaborate oral summing up of the issues and evidence in the case.

The evidence showed that appellant was a man of considerable means and ability, who had been engaged in business in Chicago for several years with a large concern of which he was secretary, treasurer and president. It also shows that appellant was afforded ample opportunities to investigate the ranch and the sheep that were upon it, having visited and examined the ranch and property several times before he entered into business with respondent.

Appellant contends, first, that, by reason of the several false and fraudulent representations of respondent, the alleged contract for a copartnership of August 12, 1930, was vitiated, and that appellant is entitled to recover $2,300 advanced to respondent, together with further advances made thereafter to respondent, amounting to $1,623; second, that the relationship between the parties, as disclosed in the evidence, does not constitute a consummated partnership nor one of joint adventure; that the relationship was merely a tentative one which might or might not be consummated in the future; third, that, whether the

relationship be regarded as a partnership or mere joint adventure, it was one which could be terminated at the will of either party, and that it was actually terminated by the acts and words of appellant on or about November 22, 1930; and fourth, that the expenditures made by respondent after November 22, 1930, and after the termination of the relationship between the parties, were personal expenditures of respondent for which appellant cannot be held liable.

Appellant begins his argument with the statement that fraud vitiates all contracts, which is true. The difficulty is that fraud must be proven by evidence that is clear and convincing, and the trial court, having the parties before it and being amply able to judge of their credibility, found against appellant on the issue of fraud. After comparing the evidence with the analysis thereof by the trial judge, we are also impressed that there was no clear and convincing evidence of any fraud or misrepresentation by respondent to appellant. Hence, the cases cited by appellant to that point are inapt.

It is next asserted that there was neither a special nor a general partnership, but, at most, a tentative arrangement never consummated. As to this, appellant is conclusively estopped by the allegation in his own complaint in his separate action and in the affidavit in support of the receivership heretofore recited and other allegations which were contained in his complaint. It does not belong to him now to urge those objections. *Burrows v. McCalley,* 17 Wash. 269, 49 Pac. 508. For analogous reasoning on similar questions, see *Zeimantz v. Blake,* 39 Wash. 6, 80 Pac. 822; *Rapp v. Stratton,* 41 Wash. 263, 83 Pac. 182.

It is correct, as appellant contends, that a partnership for an indefinite length of time can be determined at will by either party, usually without con-

sent, on proper notice *(Seeley v. Morris,* 137 Wash. 274, 242 Pac. 359). This contention, however, is based upon the fallacious premise that appellant had given notice on November 22, 1930, of the termination of the partnership. As to this, his acts and conduct thereafter, until February 26, 1931, were inconsistent therewith; and his declarations in his own action against respondent are against him and bind him as a copartner until the latter date. The cases cited by appellant, of which *Lucopoulos v. Sotriopoulos,* 111 Wash. 400, 191 Pac. 149, is the principal case, are upon entirely different facts and conditions than are here involved.

The contention that expenditures made by respondent after November 22, 1930, was after the termination of the relationship between the parties and that all such were expenditures for which appellant cannot be held liable, also assumes the fact of the termination of the partnership relation on November 22, 1930.

The finding and judgment of the trial court in favor of respondent on his accounting suit are amply supported by competent evidence, as to which there is no preponderance to the contrary. Appellant seems to contend that there could be no such accounting until *after* the partnership had been terminated, and quotes *Potter v. Scheffsky,* 139 Wash. 238, 246 Pac. 576, to the effect

". . . that a partner cannot recover from a copartner money received by him, until after a full settlement of the partnership business; nor, before dissolution of the partnership, maintain an action against a copartner to recover advances made to the partnership."

In the cited case, one copartner, without seeking a dissolution of the partnership and denying its exist-

ence, attempted to recover money from the other. On the facts presented to the trial court and to this court, we held that there was clear proof of the existence of a partnership, and that one partner could not recover, from the other, money received by him until after a full settlement of the partnership business; nor before a dissolution of the partnership maintain an action against a copartner for advances made.

A partnership may be dissolved, an accounting had and a money judgment recovered, in one action. *Bingham v. Keylor*, 25 Wash. 156, 64 Pac. 942.

When either or both copartners have moved to dissolve the partnership and for an accounting, that should be sufficient notice of dissolution.

It is clear that the judgment must be, and it is, affirmed.

BEALS, C. J., MITCHELL, and MILLARD, JJ., concur.